UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE A. JOHNSON,

      Plaintiff,

                                                CASE NO. 4:10-CV-12321-DT
v.                                     JUDGE MARK A. GOLDSMITH
                                                MAGISTRATE JUDGE PAUL KOMIVES

SINAI HOSPITAL OF GREATER
DETROIT, d/b/a Sinai-Grace Hospital,
a Michigan Non-profit corporation,

      Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket #16)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.    *Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.    *Title VII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          3.    *ELCRA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    *Racial Discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.    *Religious Discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                                \*      \*      \*      \*      \*

I.    RECOMMENDATION: The Court should grant defendant's motion for summary judgment.

II.   REPORT:

A.    *Background*

        Plaintiff Joyce A. Johnson is a former employee of defendant Sinai Hospital of Greater Detroit (Sinai). She commenced this action by filing a *pro se* complaint on June 11, 2010, alleging that she was terminated by Sinai based on her race and religion, in violation of Title VII of the Civil Rights Act of 1963, as amended, 42 U.S.C. s 2000e et seq ("Title VII") and Michigan's Elliot-Larsen Civil

Rights Act (ELCRA), MICH. COMP. LAWS §§ 37.2101 *et seq*. The matter is currently before the Court on defendant's motion for summary judgment, filed on May 9, 2011. Plaintiff, now represented by counsel, filed a response on October 20, 2011, and defendant filed a reply on October 28, 2011.

Taken in the light most favorable to plaintiff, the evidence submitted by the parties establishes the following facts. The Detroit Medical Center (DMC) operates eight hospitals, including defendant Sinai-Grace Hospital. Sinai is a "safety net" hospital located in the City of Detroit that treats patients without regard to ability to pay. *See* Def.'s Br., Ex. A, Decl. of Mary Martin, DMC Systems Executive Director of Operations & Service Line Strategies, ¶¶ 4-5 [hereinafter "Martin Decl."].[1] Because a high proportion of the populations serviced by Sinai has either no insurance and ability to pay for medical care, or coverage only through Medicaid, DMC has experienced severe financial problems in its hospitals. *See id.*, ¶¶ 5-6. According to Martin, many physicians, and patients having a choice of hospitals, preferred other hospitals based on their perceptions that Sinai-Grace offered lower quality service than suburban hospitals. *See id.*, ¶ 8.

As part of an effort to improve service at Sinai-Grace, DMC's management devised a new admissions system. According to Martin, when a patient is admitted to the hospital based on the referral of a physician, some physicians desire to be designated as the patient's attending physician, while others prefer that their patients be assigned to a "hospitalist." Further, in some cases a patient's insurance coverage determines to what physician or physician group the patient is assigned. *See id.*, ¶ 11. Over the years, Sinai-Grace had problems with its admission process, including mis-assigning attending physicians, which in turn made physicians reluctant to refer patients to Sinai-Grace. *See id.*, ¶ 12. In June 2008, Martin was assigned to the position of Access Management Director at Sinai-

---

[1] At the time of the events giving rise to this suit, Martin went by the last name Palazzolo.

Grace to correct problems with the admission process. *See id.*, ¶ 13. In this position, Martin supervised a number of employees, including nine Emergency Access Management Specialists ("EAMS"). *See id.*, ¶ 14.

Plaintiff, a registered nurse, was employed by defendant from September 28, 1992, until her termination on March 26, 2009. At the times relevant to this action, plaintiff was an EAMS. In July 2008, shortly after being assigned to Sinai-Grace, Martin sent an e-mail to the EAMS group to survey their opinions on how to improve the assignment of patients to attending physicians. Plaintiff did not respond to this survey, although she was encouraged to do so several times. *See id.*, ¶ 16; Def.'s Br., Ex. B, Dep. Tr. of Joyce Johnson, at 63 [hereinafter "Johnson Dep."]. In March 2009, Martin prepared new Admissions Guidelines which provided parameters for physician assignment based on physician preference, type of admission, and insurance requirements. The Guidelines were approved by the hospital's leadership and sent by e-mail to each EAMS employee, and were the subject of meetings between Martin and the EAMS employees. Plaintiff received a copy of the Guidelines. *See* Martin Decl., ¶ 17 & Tab 1; Johnson Dep., at 55. Before and after implementation of the new Guidelines, Martin reviewed patient admissions and physician assignments, and addressed any errors she found either with the EAMS employees collectively or with the individual involved. *See* Martin Decl., ¶ 18. According to Martin, plaintiff repeatedly failed to implement the Guidelines, and Martin spoke to plaintiff regarding her errors. *See id.*, ¶ 19.

On March 13, 2009, Martin sent an e-mail to plaintiff asking for an explanation regarding two physician assignment errors. These two patients were assigned to the "hospitalist" group of physicians, designated as IPC. According to Martin, these patients were incorrectly assigned to IPC because only patients with Health Alliance Plan (HAP) or Great Lakes Health Plan (GLHP) are to be assigned to IPC under the Guidelines, and the patients involved had Molina and Total Health Care

3

insurance. Plaintiff responded four days later, explaining that she was not sure why the Total Health Care patient was assigned to IPC, and that with respect to the other patient "the last and only e-mail I have on Molina ins goes to IPC group." Martin responded the same day:

> Joyce–You are incorrect. Three emails were sent regarding this subject: 2 emails on 3/10 and 1 email on 3/13. The first tab of the attached and the last tab of the attached clearly indicate that Molina full admits go to PCP or staff and observations go to PCP or AIMS.
>
> I have no idea what email you are referencing that states Molina cases go to IPC. The attached grid is the blueprint and rules I expect to be followed when admitting patients. Any directives of previous directors or previous emails should be replaced with the attached document.
>
> I don't know how I can be any clearer about this. Please call me if you have additional questions.

The following day, March 18, plaintiff replied: "No where on this paper state that the pt with Molina no longer goes to ipc, also no where do it state if the pcp admit to ipc that pt can't be admitted to IPC group. It state who you can admit to, not who you can not." The same day, Martin replied:

> Joyce– I am not going to continue to argue with you over email. The attached list is broken down below. Molina would qualify as "Patient has insurance other than HAP or GLHP."
>
> Secondly, if a PCP admits to IPC, it is listed under PCP preferences. All others should be directed as stated below (PCP or staff if full admit or AIMS is observation).
>
> I am out of town this weekend but I will be coming in to meet with you on Wednesday, March 25th at 6:30 pm. I will review date from this weekend and expect the parameters established in the attached (approved by PCPs and at the direction of senior leadership including Conrad [Mallett, the hospital CEO]) to be followed.
>
> Thank you!

Plaintiff replied to this e-mail on March 22, stating: "I am sorry you feel that I'm arguing with you over e-mail when I was responding to the questions on why the pts were admitted to the IPC group." Martin Decl., ¶ 20 & Tab 2 (errors in quotations as in original).

4

While these e-mails were being exchanged, on March 18, 2009, Martin sent an e-mail to all the EAMS employees, as well as to Paru Patel, the Administrative Director of the hospital, to address some confusion that had resulted from the Guidelines. Among other things, this e-mail stated:

1) This is to be your bible. This is the source of truth for admitting patients. Anything else you have ever "heard" or "received" is obsolete.
2) The attached are not "Mary Palazzolo's" guidelines. These are guidelines set up through corporate contracting agreements, various regulations, and the senior leadership of SGH, including Conrad. They need to be followed.
3) Molina, Midwest, Total Health, etc fall into the category "Insurance other than HAP or GLHP."
. . .
8) I and Dave Soltis, along with others, have been asked to audit previous day's admissions for errors by Conrad as the physician dissatisfaction level of patients not being admitted appropriately has risen. I realize . . . that there are other points where an admitting error can occur . . . but our AMS process must be as tight as it can be. . . . When there are errors, we need to understand why. . . . If physicians feel their patients are being "stolen" and not admitted to them, our volume can drop and cause great harm to the viability of SGH. Repetitive errors for staff unwilling to follow the protocols will not be tolerated. That is why noting a deviation in the "admitting notes" section is critical.

Patel sent a follow-up e-mail to the group on the same date, stating:

I have read many emails over the last several weeks that Mary has sent to you and some that you have sent back. I have dealt with errors our group has made, and unfortunately continues to make despite very clear guidelines and directions Mary has provided.

Let me make this clear, we cannot tolerate anymore mistakes by the AMS group based on not following directions. If things are not clear, then you need to ask. If you do not ask, we have to assume you understand but have no concern to do the right thing.

Obviously this is not the case for the entire department. Many of you have embraced the challenges we have and have worked very hard in identifying and implementing processes for improvement. These are the role models of the department. It is only fair to them that those who cannot follow the change be held accountable.

On March 20, plaintiff replied to these two e-mails in an e-mail sent to Patel, Martin, and the EAMS staff. Plaintiff's e-mail stated:

5

> First I like to say this is NOT my bible? . . . . I found this e-mail very insulting. If you make it clear what we are doing this day and this time I will do it, and do it correctly, but constantly changing the rules day by day it can and do get very confusing. I've seen you once but have gotten numerous insulting e-mail. Not productive at all.

Martin Decl., Tab 4.

According to Martin, all other EAMS employees became proficient in the use of the Guidelines after a short adjustment period, but plaintiff continued to have problems, and plaintiff was unable or unwilling to implement the Guidelines. *See* Martin Decl., ¶ 25. Martin consulted with Human Resources Consultant Joi Little and Patel about terminating plaintiff's employment. Little and Patel agreed that termination was appropriate, and plaintiff was informed of her termination by Little and Martin on March 26, 2009. *See id.*, ¶ 26; Def.'s Br., Ex. C, Decl. of Joi Little, ¶ 4.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). On March 25, 2010, the EEOC issued plaintiff a right-to-sue letter. Plaintiff filed her complaint on June 11, 2010. Plaintiff's *pro se* complaint appears to allege that she was discharged as a result of her religion and her race.

B.   *Legal Standard*

   1.   *Summary Judgment Standards*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view

the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2.  *Title VII*

A plaintiff may establish a Title VII claim either through direct evidence of discrimination or through circumstantial evidence. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Court established a burden shifting framework for plaintiffs who seek to establish a discrimination claim under Title VII through circumstantial evidence, as explained by the Sixth Circuit:

> In Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In evaluating a claim of employment discrimination, we employ the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 39 L.Ed.2d 668 (1973). *See also Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 525-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. 1089 (quoting *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant was not its true reasons, but were a pretext for discrimination." *Id.* Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*; *see also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

*DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004).

In order to establish a prima facie case of discrimination, plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he suffered an adverse employment action; (3) [s]he was qualified for the position in question; and (4) [s]he was treated differently from similarly situated individuals outside of h[er] protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *DiCarlo*, 358 F.3d at 415. If a plaintiff fails to establish a genuine issue of fact with respect

to any element of his prima facie case, the Court need not consider the other elements. *See Paris v. Christiana Care Visiting Nurses Ass'n*, 197 F. Supp. 2d 111, 116 (D. Del. 2002); *Seely v. Runyon*, 966 F. Supp. 1060, 1064 n.7 (D. Utah 1997). If plaintiff establishes these four elements, the burden shifts to defendant to offer a nondiscriminatory reason for its actions. If it fails to do so, summary judgment for defendant will not be appropriate. However, this burden is one of production, and the ultimate burden of persuasion remains on the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Thus, while a defendant's failure to offer a nondiscriminatory reason to rebut a plaintiff's *prima facie* case will allow the case to go to the jury, and allow the jury to find for the plaintiff, such a failure does not entitle the plaintiff to summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) ("[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff.).

If defendant does articulate a valid nondiscriminatory reason for its actions, the burden shifts to plaintiff to show that the defendant's proffered reason is pretextual. Plaintiff can establish pretext by showing "1) that the proffered reasons had no basis in fact, 2) that the proffered reasons did not actually motivate the action, or 3) that the proffered reasons were insufficient to motivate the action." *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). At this stage, the plaintiff must show that the proffered reason is a pretext for prohibited discrimination. "A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 280 (6th Cir. 1991). Further, if the employer had an honest belief in its nondiscriminatory reason for the action, the reason is legitimate even it is later shown to be incorrect. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). At all times throughout this framework, the ultimate burden of persuasion remains with the plaintiff.

*See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

    3.    *ELCRA*

Section 202 of the ELCRA provides, in relevant part, that "[a]n employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MICH. COMP. LAWS § 37.2202(1)(a). Section 801 of the Act provides for a civil damages remedy for persons aggrieved by a violation of the Act. *See* MICH. COMP. LAWS § 37.2801(1).

As with a claim under Title VII, a plaintiff bringing a disparate treatment discrimination claim under the ELCRA may prove her case either through direct or circumstantial evidence of discrimination. "In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 132, 666 N.W.2d 186, 192 (2003). If, as is usually the case, a plaintiff has no direct evidence of discrimination, she must prove her case through circumstantial evidence. "In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Sniecinski*, 469 Mich. at 133-34, 666 N.W.2d at 193. As explained by the Michigan Supreme Court:

> This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces

10

such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination.

*Id*. at 134, 666 N.W.2d at 193 (internal citations, quotation, and footnote omitted).[2]

Regardless of whether discrimination is shown by direct or circumstantial evidence, the plaintiff must show a causal link between the discriminatory animus and the adverse employment action. *See id*. at 134-35, 666 N.W.2d at 193. Further, notwithstanding the burden-shifting framework described above, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hazle v. Ford Motor Co.*, 464 Mich. 456, 464 n.8, 628 N.W.2d 515, 522 n.8 (2001) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Because ELCRA is similar to analogous federal anti-discrimination laws such as Title VII and the Age Discrimination in Employment Act, federal cases applying those laws are persuasive in applying ELCRA, *see Radtke v. Everett*, 442 Mich. 368, 381-82, 501 N.W.2d 155, 162 (1993); *Pena v. Ingham County Road Comm'n*, 255 Mich. App. 299, 311 n.3, 660 N.W.2d 351, 359 n.3 (2003), although they are not binding, *see Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 697 N.W.2d 851, 859 (2005); *Pena*, 255 Mich. App. at 311 n.3, 660 N.W.2d at 359 n.3.

C.     *Analysis*

    1.     *Racial Discrimination*

With respect to her racial discrimination claim, plaintiff asserts in her response that her claims "have merit based on direct evidence and circumstantial evidence of incidents of discrimination by

---

[2]Although originally adopted for claims of race discrimination under the ELCRA, this framework applies equally to claims of religious discrimination. *See Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515, 521 (2001).

Defendant." Pl.'s Br., at 2. Although plaintiff asserts that there is direct evidence of discrimination, she points to no such evidence. Direct evidence of discrimination is evidence that, if believed by the jury, proves the fact of discrimination without requiring any inferences. *See Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Direct evidence generally consists of either a facially discriminatory employment policy or a decision maker's express statement indicating a discriminatory animus. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *see also*, *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) ("Direct evidence requires an admission by the decision maker that his or her actions were based upon the prohibited animus."); *Roberts v. Park Nicollet Health Services*, 528 F.3d 1123, 1128 (8th Cir. 2008) (internal quotation omitted) ("Direct evidence for these purposes includes evidence of remarks of the employer that reflect a discriminatory attitude, as well as comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions."). Here, plaintiff has pointed to no facially discriminatory policy, statements of defendant's decision makers reflecting a discriminatory animus, or any other direct evidence of discrimination. Thus, plaintiff can survive summary judgment only if she has presented sufficient circumstantial evidence of discrimination to raise an inference of discrimination.

Here, there is no question that plaintiff is within a protected class or that she suffered an adverse employment action. However, plaintiff has failed to present any evidence to satisfy the third and fourth elements of her *prima facie* case. First, plaintiff has failed to present evidence that she was qualified for the position. To be considered qualified for the position, "plaintiff must show that she was performing at a level which met defendant's legitimate expectations." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999); *Town v. Michigan Bell Tel.*

12

*Co.*, 455 Mich. 688, 699, 568 N.W.2d 64, 69 (1997).  In support of her claim, plaintiff points to an April 10, 2008, evaluation in which she was rated 2.80 on a 4-point scale, placing her in the "expert" classification.  This evaluation, however, predates the events at issue here by nearly a year, and does not reflect her ability or willingness to implement the new Guidelines.  It is therefore not probative of whether, at the time of her termination, she was performing at a level which met defendant's legitimate expectations.  *See Barnhart v. Mack Trucks, Inc.*, 157 F.R.D 427, 432 & n.7 (N.D. Ill. 1994), *aff'd* 52 F.3d 328 (7th Cir. 1995).  Here, defendant has presented evidence that plaintiff was not performing satisfactorily because she repeatedly failed to properly implement the new Guidelines, and plaintiff has presented no evidence to the contrary.  Thus, she has failed to satisfy the third element of her *prima facie* case.

Likewise, plaintiff has failed to present any evidence to support the fourth element of her *prima facie* case, that she was treated differently from other, similarly situated EAMS employees outside the protected class. Plaintiff argues that "[t]he fact that similarly situated non-African American EAMS staff also committed admission errors but were not terminated or disciplined by Defendant for there [sic] actions, indicates that Defendant treated and evaluated Ms. Johnson differently than the other Non-African American EAMS staff."  Pl.'s Br., at 3.  However, plaintiff points to no evidence to support her assertion that other EAMS staff were treated differently.  It is true that Martin testified that other EAMS staff had errors when first using the new Guidelines.  She also testified, however, that:  plaintiff had the most errors, *see* Def.'s Reply, Ex. G, Dep. Tr. of Mary Martin, at 36-37; she attempted to schedule three different meetings with plaintiff to discuss the matter but was unable to do so, *see id*. at 41; the errors by the other EAMS staff were committed within the first few days of implementing the guidelines, *see id*. at 48; the other EAMS staff did not make repetitive, continuing errors, *see id*.; the other EAMS staff documented their errors but plaintiff

13

did not, *see id.*; and that the other staff "wanted to explain the error or learn from error," but plaintiff "just continued to argue about the matrix," *id.* Thus, the evidence submitted by defendant suggests that plaintiff alone had continued difficulty in implementing the Guidelines and an unwillingness or inability to do so properly. "[P]laintiff points to no specific evidence that [other EAMS staff] had similar performance problems, or that they were otherwise similarly situated to plaintiff. Plaintiff's generalizations, conclusory statements, and her own subjective beliefs are insufficient to support a finding of discrimination." *Chapin v. Nationwide Mut. Ins. Co.*, No. 2:05-cv-734, 2007 WL 915182, at *9 (S.D. Ohio Mar. 26, 2007) (citing *Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996)).

Further, even if plaintiff could establish her *prima facie* case, defendant is entitled to summary judgment because it has presented evidence that it had a legitimate, non-discriminatory reason for terminating plaintiff's appointment, and plaintiff has presented no evidence that this reason was a pretext for discrimination. Defendants have presented, without contradiction by any evidence submitted by plaintiff, evidence that plaintiff was unwilling or unable to correctly apply the Guidelines, refused to correct her errors, and refused to meet with Martin to discuss the matter. Further, defendants have presented evidence that a proper application of the Guidelines was critical to the economic viability of the hospital, and that this fact was repeatedly communicated to the EAMS staff. Relying on *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009), plaintiff argues that these reasons were pretextual because they had "no basis in fact." However in that case, which involved a failure-to-promote claim, the plaintiff presented evidence that she was arguably more qualified for the position than the male to whom it had been given, as well as evidence of discriminatory comments made by co-workers and supervisors. *See Risch*, 581 F.3d at 392-93. Here, there is no comparable evidence, or indeed any evidence that the relevant decision makers terminated plaintiff for any reason other than what they claimed–plaintiff's inability or unwillingness, in their

14

view, to properly apply the Guidelines.[3]

It may be that, in plaintiff's view, defendant treated her poorly or were not clear in their expectations regarding application of the Guidelines. But plaintiff has presented no evidence that defendant did so because of her race. The employment discrimination laws prohibit discrimination on the basis of race, sex, and the like; they do not establish general civility codes nor require that employers make competent business decisions. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (internal quotation omitted) (Title VII is "neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."); *Mayberry v. Endocrinology-Diabetes Ass'n*, 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996) ("Discrimination statutes . . . do not require that employers make fair or accurate assessments of employees abilities or that they assign employees to appropriate positions, absent discriminatory intent or impact."); *Town*, 455 Mich. at 704, 568 N.W.2d at 72 (internal quotation omitted) (question under ELCRA "is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). "Unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of . . . discrimination." *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 712, 565 N.W.2d 401, 411 (1997). Accordingly, the Court should grant defendant's motion for summary judgment on this claim.

    2.    *Religious Discrimination*

In her *pro se* complaint, plaintiff also suggests that defendant discriminated against her based

---

[3]Although plaintiff does not make this argument in her brief, in her *pro se* complaint plaintiff claimed that she was replaced by a non-African American, who was given a salary $10,000 greater than the salary she had received. This fact alone does not provide evidence of differential treatment of a similarly situated employee or show that defendant's reason for terminating plaintiff's employment was pretextual. Martin avers that two non-African American women were the only people to apply for plaintiff's position, and that the woman who was hired received a higher salary than plaintiff because she had eleven more years of relevant job experience. *See* Martin Decl., ¶ 31. Plaintiff has presented no evidence to the contrary.

on her religion.  Plaintiff makes no argument regarding this claim in her response to defendant's motion for summary judgment, and at her deposition she conceded that she did not believe she was fired because of her religion.  *See* Johnson Dep., at 99-100.  And plaintiff has presented no evidence to suggest that defendants treated her differently from other employees because of her religious beliefs.

To the extent plaintiff was attempting to allege a hostile environment discrimination claim based on Martin's e-mail stating that the new Guidelines were to be the EAMS staff's "Bible," such a claim is without merit.  Hostile work environment claims address workplaces "permeated with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  In order to establish a prima facie case of a hostile work environment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her religion; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).[4]  Another Judge of this Court has recently explained the standards governing a hostile environment claim:

> To establish the existence of a hostile work environment a plaintiff must meet both a subjective and objective standard. *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir.2000) ("The conduct must be severe and pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive."). To determine whether

---

[4]As noted above, the same elements are necessary to establish a *prima facie* hostile environment claim under ELCRA.  *See Johnson v. City of Flint*, No. 09-11805, 2010 WL 1957208, at *3 & n.6 (E.D. Mich. May 13, 2010) (Edmunds, J.) (quoting *Chambers v. Trettco, Inc.*, 463 Mich. 297, 311, 614 N.W.2d 910, 915 (Mich.2000)).

> a hostile work environment exists, a court must consider the totality of the circumstances rather than examining specific incidents or classes of incidents in isolation. *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir.1999). A court should consider a number of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. However, the Sixth Circuit has cautioned that "Title VII was not meant to create a 'general civility code' and the 'sporadic use of abuse language, gender-related jokes, and occasional teasing' are not sufficient to establish liability. *Clark*, 400 F.3d at 352 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In addition, a plaintiff cannot rely on alleged harassment that was not based on the plaintiff's protected status. *Bowman*, 220 F.3d at 464 (refusing to consider alleged acts of harassment that were not based on plaintiff's status as a male).

*Schaeffer v. Tractor Supply Co.*, No. 08-15000, 2010 WL 2474085, at *4-*5 (E.D. Mich. June 9, 2010) (Cohn, J.). Although *Schaeffer* involved a hostile environment based on gender, the standards discussed by the Court apply equally to a claim involving a hostile environment based on religion. *See Hafford*, 183 F.3d at 512 (quoting *Crawford v. Medina Gen'l Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) ( "The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.").

Here, plaintiff cannot show that she subjectively viewed Martin's e-mail as creating a hostile environment. Although in her reply to Martin's e-mail she stated that she viewed Martin's comment as "insulting," in her deposition she admitted that she was not insulted by the reference to the Bible, but rather that the whole e-mail itself "was insulting because of all the other past stuff, when you constantly telling me I'm doing something wrong, but not telling me what I'm doing wrong." Johnson Dep., at 93. Further, the single reference to the Guidelines as the EAMS staff's "Bible" did not objectively create a hostile environment. It consisted of a single statement, and in context it is clear that the language was used not in a religious sense, but only to convey to the EAMS staff that the Guidelines were to be the sole source of guidance in patient admissions and physician assignments.

*See* Martin Decl., Tab 4 ("This is to be your bible. This is the source of truth for admitting patients. Anything else you have ever 'heard' or 'received' is obsolete."). This single, innocuous statement was insufficient to create an objectively hostile environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Accordingly, the Court should conclude that defendant is entitled to summary judgment on plaintiff's religious discrimination claims.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law on plaintiff's racial and religious discrimination claims under Title VII and ELCRA. Accordingly, the Court should grant defendant's motion for summary judgment.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/Paul J. Komives
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE

Dated: 1/6/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on January 6, 2012.
>
>                             s/Eddrey Butts
>                             Case Manager